IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON I. BRUNNER for JESSICA L. ELLIS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 08-56J |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | JUDGE GIBSON |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment. Doc. Nos. 14 & 18. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 14) will be denied, the Motion for Summary Judgment filed by the Defendant (Doc. No. 18) will be granted, and the administrative decision made by the Commissioner of Social Security ("Commissioner") in this case will be affirmed.

### II. PROCEDURAL HISTORY

Plaintiff Sharon I. Brunner ("Brunner") protectively filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") on behalf of her daughter, Jessica L. Ellis ("Ellis"), on March 14, 2005, alleging disability as of January 1, 2003.

R. p. 57. On June 21, 2005, the application was denied by the state agency. R. p. 38. Brunner requested an administrative hearing on July 27, 2005. R. p. 42. On July 6, 2006, Brunner and Ellis appeared before Administrative Law Judge Patricia Henry ("ALJ"). R. pp. 249-256. Because they had neither a licensed attorney nor a lay representative to assist them, the ALJ agreed to postpone the hearing.[1] *Id.* Having secured counsel, Brunner and Ellis appeared for a hearing in Altoona, Pennsylvania, on December 12, 2006. R. pp. 257-290. Both Brunner and Ellis testified at the hearing. *Id.* On February 5, 2007, the ALJ issued a decision holding that Ellis was not disabled within the meaning of the Act. R. pp. 11-27. The Appeals Council denied Brunner's request for review on January 9, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. p. 4.

Brunner commenced this action against the Commissioner on March 6, 2008, seeking judicial review of the ALJ's decision denying Ellis' application for SSI benefits. Doc. No. 1. Brunner and the Commissioner filed cross-motions for summary judgment on September 16, 2008, and November 17, 2008, respectively. Doc. Nos. 14 & 18. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

A district court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 853 (1971). Substantial evidence is more than just a scintilla of

---

[1] Congress has specifically authorized the Commissioner to permit lay representatives, as well as licenced attorneys, to assist claimants during administrative proceedings before the Commissioner. 42 U.S.C. § 406(a)(1).

2

evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also Stewart v. Sec'y of H.E.W.*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the United States Court of Appeals for the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g).

The relevant portion of Title XVI provides:

> (C)(I) An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
> (ii) Notwithstanding clause (I), no individual under the age of 18 who engages in substantial gainful activity (determined in accordance with regulations prescribed pursuant to subparagraph

3

(E)) may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C). The Commissioner has promulgated regulations to implement the statutory mandate, providing for a three-step sequential evaluation process to determine whether a claimant under the age of 18 is statutorily disabled and, therefore, entitled to SSI benefits. At the first step, the Commissioner inquires as to whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If the claimant is engaging in substantial gainful activity, he or she is not disabled. *Correa v. Comm'r of Soc. Sec.*, 381 F. Supp. 2d 386, 393 (D.N.J. 2004). This initial determination, of course, is consistent with the statutory mandate of 42 U.S.C. § 1382c(a)(3)(C)(ii). If the claimant is not engaging in substantial gainful activity, the process proceeds to the second step, at which the Commissioner inquires as to whether the claimant has a severe impairment (i.e., a medically determinable impairment that causes more than minimal functional limitations). 20 C.F.R. § 416.924(c). If the claimant has no medically determinable impairment, or only a medically determinable impairment that constitutes a "slight abnormality" rather than a "severe impairment," he or she is not statutorily disabled. *Id.* If the claimant has multiple impairments, the combined effects of those impairments are looked at comprehensively for the purpose of making this determination. 20 C.F.R. § 416.924a(b)(4). Assuming that the claimant satisfies the first two steps, the inquiry proceeds to the third step. At the third and final step of the process, the Commissioner determines whether the claimant's impairment (or combination of impairments) meets, medically equals or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). 20 C.F.R. § 416.924(d). If so, the claimant is deemed to be statutorily disabled.

If the claimant's impairment (or combination of impairments) does not meet or medically

equal a listed impairment, the Commissioner determines whether the impairment (or combination of impairments) functionally equals a listed impairment. *Correa*, 381 F. Supp. 2d at 393. In conducting this inquiry, the Commissioner considers both severe and non-severe impairments. 20 C.F.R. § 416.926a(a). An impairment functionally equals a listed impairment if the child has marked[2] limitations in at least two, or an extreme[3] limitation in at least one, of the six domains of functioning enumerated in 20 C.F.R. § 416.926a(b)(1), which include: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. *Correa*, 381 F. Supp. 2d at 393.

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment

---

[2]20 C.F.R. § 416.926a(e)(2)(i) provides: "We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

[3]20 C.F.R. § 416.926a(e)(3)(i) provides: "We will find that you have an 'extreme' limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked.' 'Extreme' limitation is the rating we give to the worst limitations. However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."

> which an administrative agency alone is authorized to make, must
> judge the propriety of such action solely by the grounds invoked by
> the agency. If those grounds are inadequate or improper, the court
> is powerless to affirm the administrative action by substituting what
> it considers to be a more adequate or proper basis. To do so would
> propel the court into the domain which Congress has set aside
> exclusively for the administrative agency.

332 U.S. 194, 196, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995, 1999 (1947). The Third Circuit recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's opinion.

## V. DISCUSSION

Ellis was born on August 28, 1993, and is presently fifteen years old. R. p. 17. In her decision, the ALJ determined that Ellis had not engaged in substantial gainful activity. *Id.* Ellis was found to be suffering from asthma and a learning disability. *Id.* Although the ALJ concluded that these impairments were "severe" for purposes of 20 C.F.R. § 416.924(c), she determined that they did not meet or medically equal an impairment found in the Listing of Impairments. R. pp. 17-18. Moving on to the question of functional equivalence, the ALJ concluded that Ellis had no limitation in the domain of moving about and manipulating objects and less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being. R. pp. 18-26. These findings, of course, resulted in a determination that Ellis was not statutorily disabled.

Brunner challenges the ALJ's determinations with respect to both the issue of medical equivalence and the issue of functional equivalence. Her argument concerning the issue of medical equivalence focuses on Listings 103.00 and 112.00, and her argument concerning the issue of

6

functional equivalence focuses on the domains of acquiring and using information, attending and completing tasks, and health and physical well-being. Doc. No. 15, pp. 3-13. However, before addressing Brunner's arguments, the Court must take notice of some background information relevant to this case.

The Individuals with Disabilities Education Act ("IDEA") [20 U.S.C. § 1400 *et seq.*] is a comprehensive statutory scheme designed to ensure that disabled children are afforded educational opportunities which are tailored to their unique needs. The IDEA is Spending Clause legislation. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295, 126 S. Ct. 2455, 2458, 165 L. Ed. 2d 526, 533 (2006). In order to receive federal funds available under the IDEA, a participating State must submit a plan which provides assurances that it has in effect policies and procedures designed to satisfy a list of conditions specifically enumerated within the statute. *Leighty v. Laurel Sch. Dist.*, 457 F. Supp. 2d 546, 561 (W.D. Pa. 2006). First and foremost, a participating State is required to provide a "free appropriate public education" ("FAPE") to each disabled child within the State. 42 U.S.C. § 1412(a)(1). In furtherance of that objective, each disabled child must be provided with an "individualized education program" ("IEP"), which is a written statement setting forth specific, measurable goals for the disabled child to meet within the context of his or her educational setting. 42 U.S.C. §§ 1412(a)(4), 1414(d). The FAPE and IEP requirements are designed to ensure that disabled children are provided with the individualized instruction and support that their disabilities necessitate. As a matter of federal law, a disabled child residing within a participating State is entitled to receive an education that will confer "meaningful benefit" upon him or her. *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).

7

Among other things, an IEP must specify when (if ever) a disabled child will be educated outside of the regular classroom. 20 U.S.C. § 1414(d)(a)(A)(i)(V). This statutory requirement evinces a recognition that, in some instances, a child's need for individualized instruction will require him or her to be taught outside of the general curriculum. Nevertheless, the IDEA also contains a "least restrictive environment" condition, which requires a participating State to ensure that, "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and [that] special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5). This condition reflects a legislative intent to "mainstream" a disabled child's education by permitting him or her to be educated with his or her nondisabled peers to the extent possible. *Pachl v. Seagren*, 453 F.3d 1064, 1067-68 (8th Cir. 2006). Congress evidently wanted to ensure that its mandate that disabled children be educated in an "appropriate" manner not be used to justify the unwarranted exclusion of such children from the regular classroom activities enjoyed by their nondisabled classmates. The IDEA requires individualized instruction where necessary, and the incorporation of the general curriculum where possible, to provide disabled children with needed special instruction without making them feel like outsiders. *Leighty*, 457 F. Supp. 2d at 559.

Ellis qualifies as a "child with a disability" within the meaning of the IDEA.[4] During the

---

[4] In making this observation, the Court does not mean to suggest that Ellis is "disabled" within the meaning of Title XVI of the Social Security Act. As noted earlier, Title XVI provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results

8

relevant period of time, her IEP directed that she be taught reading, math and English in a "learning support classroom," and that she be taught American Cultures, science and all electives in a regular classroom. R. p. 153. This arrangement conformed with IDEA's FAPE and mainstream education requirements. According to an assessment in the sixth grade, while Ellis had "cognitive abilities in the average range," her level of achievement in the areas of reading and math was not commensurate with her cognitive abilities. R. p. 139. In the seventh grade, Ellis apparently still read at a fourth-grade level. R. p. 157. Ellis's learning disability, deemed by the ALJ to be "severe," is well-documented in the administrative record.

The record also establishes that Ellis suffers from asthma. R. pp. 221, 224. Dr. Jeffrey Rosch examined Ellis on July 18, 2006. R. p. 231. On that occasion, Ellis was found to be suffering from both asthma and perennial allergic rhinitis. *Id.* She was instructed to avoid exposure to indoor animals. *Id.* It was noted that smoking should not be permitted inside of her home or car. *Id.* Allergy shots were prescribed for her allergies, and she was told to use an inhaler for her asthma. R. pp. 227, 231. At the hearing, both Ellis and Brunner testified that Ellis was unable to participate in athletic activities. R. pp. 267, 274, 280. The ALJ appropriately determined that Ellis' asthma was "severe." R. p. 17.

Brunner argues that the ALJ erred in determining that Ellis' impairments did not meet or medically equal Listings 103.00 (concerning disorders of the respiratory system) and 112.00

---

in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The IDEA defines the term "child with a disability" broadly enough to include any child with "specific learning disabilities . . . who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A)(i)-(ii). The disability standards applicable to these two statutes are not coterminous. Consequently, the mere fact that Ellis is "disabled" within the meaning of the IDEA does not necessarily mean that she is "disabled" within the meaning of the Social Security Act.

9

(concerning mental disorders). Doc. No. 15, pp. 6-10. Nevertheless, Brunner fails to explain how Ellis can establish the existence of medical equivalence. Ellis cannot qualify for benefits under a medical equivalence theory merely by showing that the overall functional impact of her unlisted impairments is the same as that of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531-32, 110 S. Ct. 885, 891-93, 107 L. Ed. 2d 967, 980-81 (1990). Instead, she must show that her impairments meet the *specific* criteria contained in the applicable listings. *Id.* at 531, 110 S. Ct. at 891, 107 L. Ed. 2d at 980. Brunner's argument concerning the issue of medical equivalence consists of nothing more than references to treatment notes interspersed with general quotations from judicial decisions describing the Commissioner's duty to consider medical evidence. Doc. No. 15, pp. 6-10. The listings contain particular criteria that Brunner fails to discuss.

In her opinion, the ALJ expressly stated that Ellis' impairments did not meet or medically equal an impairment covered under Listing 112.00. R. p. 18. Dr. Larry Smith, a state agency medical consultant, opined that Ellis' impairments were not medically equivalent to those covered under a specific listing. R. p. 183. The ALJ relied on Dr. Smith's opinion in making her determination. R. p. 18. The ALJ also observed that no treating or examining physician expressed the view that Ellis' impairments were medically equivalent to a listed impairment. *Id.* This analysis was sufficient to permit meaningful judicial review, and the ALJ's conclusion was supported by substantial evidence. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007). Reliance on Dr. Smith's opinion was particularly appropriate because Brunner could point to no evidence from a treating source indicating that Ellis' impairments were medically equivalent to a listed impairment. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Beyond what has already been said, the Court need not conduct an exhaustive inquiry into

the issue of medical equivalence in this case. By failing to articulate her basis for believing that Ellis' impairments meet or medically equal a listed impairment, Brunner waives the issue. *Fonseca v. United States*, 474 F. Supp. 2d 1011, 1013 (E.D. Wis. 2007). The Court is under no obligation to independently consider all of the complex medical criteria surrounding a medical equivalence determination without some guidance from Brunner as to the precise basis for her position. *United States v. Dunkell*, 927 F.2d 955, 956 (7th Cir. 1991); *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D.Colo. 1999). Since Brunner has failed to properly develop her argument concerning the issue of medical equivalence, the Court will not discuss it further. *Franklin Savings Corp. v. United States*, 180 F.3d 1124, 1128, n. 6 (10th Cir. 1999).

Brunner also contends that the ALJ erred in determining that Ellis' impairments were not functionally equivalent to a listed impairment. She does not take issue with the ALJ's conclusion that Ellis had no limitation in the domain of moving about and manipulating objects and less than marked limitations in the domains of interacting and relating with others and caring for herself. Consequently, the Court's inquiry is focused solely on the domains of acquiring and using information, attending and completing tasks, and health and physical well-being. To establish that Ellis is disabled under a theory of functional equivalence, Brunner must establish that Ellis has marked limitations in two domains or an extreme limitation in one domain. *Encarnacion v. Barnhart*, 331 F.3d 78, 86-92 (2d Cir. 2003). Brunner does not argue that Ellis has an extreme limitation. Instead, she argues that Ellis has marked limitations in the three domains at issue. Doc. No. 15, pp. 10-13. Accordingly, the Court must review the record to determine whether "substantial evidence" supports the ALJ's conclusion that Ellis was not markedly limited in the domains of acquiring and using information, attending and completing tasks, and health and physical well-

11

being.

The domain of health and physical well-being accounts for a claimant's cumulative effects of physical and mental impairments, including the effects of any associated treatments or therapies. 20 C.F.R. § 416.926a(l). No evidence supports the assertion that Ellis is markedly limited in this domain of functioning. The record paints a picture of a young girl engaging in typical childhood activities. On July 20, 2002, Ellis was treated in the emergency room at Altoona Hospital after being accidentally struck in the head by a rock thrown by one of her friends. R. pp. 218-219. At that time, Ellis was eight years old. *Id.* A year and a half later, Ellis returned to the emergency room after cutting her knee while riding a sled. R. p. 215. On January 14, 2004, Ellis injured her foot while playing kickball. R. p. 212. Roughly ten months later, she was seen in the emergency room for breathing difficulties. R. p. 207. She had a sore throat and a hoarse voice on March 4, 2005, prompting the school nurse to recommend that Ellis have her tonsils examined. R. p. 199. On January 30, 2006, Ellis injured her left ankle while jumping off of the hood of a car. R. pp. 195, 223. Just a few months later, she injured her left ankle again, when a porch swing fell on her foot. R. p. 190.

Admittedly, the record documents Ellis' history of asthma. R. pp. 221, 224, 226-227, 231. Nevertheless, there is no evidence that her asthma has resulted in drastic functional limitations. Ellis testified that her asthma had precluded her participation in sporting events. R. pp. 267, 274. However, an inability to participate in athletic events does not rise to the level of limitation necessary for a claimant to establish the existence of a disability under a theory of functional

> "frequent" means that you have episodes of illness or exacerbations that
> occur on an average of 3 times a year, or once every 4 months, each
> lasting two weeks or more. We may also find that you have a "marked"
> limitation if you have episodes that occur more often than 3 times in a
> year or once every 4 months but do not last for 2 weeks, or occur less
> often than an average of 3 times a year or once every 4 months but last
> longer than 2 weeks, if the overall effect (based on the length of the
> episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv). As the language of the regulation makes clear, "episodes of illness" or "exacerbations" must consume approximately six weeks of a given year in order for a claimant to have a marked degree of limitation in the domain of health and physical well-being. At the hearing, Ellis testified that she typically suffered approximately five or six asthma attacks each winter, requiring trips to the emergency room. R. p. 273. Nonetheless, the record does not contain evidence which indicates that these attacks debilitate Ellis for the equivalent of six weeks per year. Accordingly, substantial evidence supported the ALJ's conclusion that Ellis had a "less than marked" degree of limitation in the domain of health and physical well-being.

The evidence concerning the remaining two domains at issue centers on Ellis' academic record. In support of her argument that Ellis is markedly limited in the domains of acquiring and using information and attending and completing tasks, Brunner relies primarily on a teacher questionnaire completed by two teachers (Ellis' sixth-grade and learning support teachers) on May 3, 2005. R. pp. 84-91. With respect to the domain of acquiring and using information, the teachers opined that Ellis had a "slight problem" comprehending oral instructions, understanding and participating in class discussions, and providing organized oral explanations and adequate descriptions. R. p. 85. They further indicated that Ellis had an "obvious problem" understanding school and content vocabulary and recalling and applying previously learned material. *Id.* Finally, the teachers reported that Ellis had a "serious problem" reading and comprehending written

14

equivalence. 20 C.F.R. § 416.926a(m).[5] Dr. Smith opined that Ellis' degree of limitation in the domain of health and physical well-being was less than marked, and there is no evidence which contradicts his assessment.

To put the inquiry in its proper context, one must consider the language of the applicable regulation in determining whether Ellis is markedly limited in the domain of health and physical well-being. The standard for making this determination is contained in 20 C.F.R. § 416.926a(e)(2)(iv), which provides as follows:

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain,

---

[5]The language of the regulation provides:
> (m) Examples of impairments that functionally equal the listings. The following are some examples of impairments and limitations that functionally equal the listings. Findings of equivalence based on the disabling functional limitations of a child's impairment(s) are not limited to the examples in this paragraph, because these examples do not describe all possible effects of impairments that might be found to functionally equal the listings. As with any disabling impairment, the duration requirement must also be met (see §§ 416.909 and 416.924(a)).
> (1) Documented need for major organ transplant (e.g., liver).
> (2) Any condition that is disabling at the time of onset, requiring continuing surgical management within 12 months after onset as a life-saving measure or for salvage or restoration of function, and such major function is not restored or is not expected to be restored within 12 months after onset of this condition.
> (3) Effective ambulation possible only with obligatory bilateral upper limb assistance.
> (4) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.
> (5) Requirement for 24-hour-a-day supervision for medical (including psychological) reasons.
> (6) Infants weighing less than 1200 grams at birth, until attainment of 1 year of age.
> (7) Infants weighing at least 1200 but less than 2000 grams at birth, and who are small for gestational age, until attainment of 1 year of age. (Small for gestational age means a birth weight that is at or more than 2 standard deviations below the mean or that is below the 3rd growth percentile for the gestational age of the infant.)
> (8) Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until attainment of 1 year of age.

20 C.F.R. § 416.926a(m).

13

material, comprehending and doing math problems, expressing ideas in written form, learning new material, and applying problem-solving skills in class discussions. *Id.* It was noted that Ellis had often failed to complete her assignments even when she was capable of doing so, and that she had admitted her own failure to properly study for tests. *Id.* At the hearing, Ellis herself testified that she had not been completing her homework assignments. R. p. 264.

In the questionnaire, the teachers also evaluated Ellis' abilities in the domain of attending and completing tasks. R. p. 86. They indicated that Ellis had a "slight problem" carrying out multi-step instructions and working at a reasonable pace and an "obvious problem" organizing her own things or school materials and completing work accurately without making careless mistakes. *Id.* The only "very serious" problem that Ellis had with respect to this domain was completing her classroom and homework assignments. *Id.* She had "no problem" paying attention when spoken to directly, sustaining attention during play/sports activities, focusing long enough to finish assigned activities or tasks, refocusing on tasks, carrying out single-step instructions, waiting to take turns, changing from one activity to another without being disruptive, and working without distracting herself or others. *Id.* It was noted that Ellis was better at completing her in-class assignments than she was at completing her homework assignments. *Id.*

In order to establish that Ellis is statutorily disabled under a theory of functional equivalence, Brunner must show that Ellis has marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). The Court has already determined that the ALJ's conclusion that Ellis had a "less than marked" degree of limitation in the domain of health and physical well-being was supported by substantial evidence. Thus, Brunner can prevail only by showing that Ellis has marked limitations in both remaining domains (i.e., acquiring and using

15

information and attending and completing tasks) or that she has an extreme limitation in one of them. Brunner does not argue that Ellis has an extreme limitation in either domain. Doc. No. 15, pp. 10-11. Instead, she contends that the evidence supports a finding of marked limitations in these domains. *Id.*

Dr. Smith opined that Ellis had a "less than marked" degree of limitation in both domains. R. p. 185. The questionnaire completed by Ellis' teachers supports the ALJ's conclusion that Ellis had a "less than marked" degree of limitation in the domain of attending and completing tasks. R. p. 86. The domain of acquiring and using information presents a closer call, since the questionnaire could easily be construed as an opinion that Ellis was markedly limited in this domain. R. p. 85. Nevertheless, even if the ALJ's finding with respect to the domain of acquiring and using information was not supported by substantial evidence, it was inconsequential. Although the Court is not free to substitute its own rationale for that of the ALJ to affirm the Commissioner's decision, a harmless error analysis is appropriate where, as here, the ALJ's additional findings would have been adequate to support the decision even if the erroneous finding had not been made. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The Third Circuit indicated that under certain circumstances, a harmless error analysis is appropriate in the Social Security disability context. *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984)("We could apply a harmless error analysis with respect to a claim that the adjudicator may have been biased only if the record contained no evidence whatsoever which might support a finding of disability."). Therefore, the Court assumes *arguendo* (without deciding) that the ALJ erred in concluding that Ellis had a "less than marked"

16

degree of limitation in the domain of acquiring and using information.[6] The alternative determination that Ellis had a "less than marked" degree of limitation in the domain of attending and completing tasks was supported by substantial evidence.[7] Even if Brunner could establish that Ellis is markedly limited in the domain of acquiring and using information, that would be insufficient to disturb the ALJ's ultimate conclusion that Ellis is not statutorily disabled.[8] For this reason, the Commissioner's administrative decision in this case must be affirmed.

The Court acknowledges that Ellis has encountered academic difficulties. Some of these difficulties are undoubtedly due to her learning disability. However, to some extent, the evidence suggests that Ellis' difficulties may be due to other factors. The record indicates that Ellis misses school more often than most students. R. p. 238. She apparently experienced emotional problems and nightmares after her father was incarcerated for molesting two of Brunner's nieces. R. pp. 238, 281. Ellis admitted at the hearing that she had not been doing much of her assigned homework. R. p. 264. Her teachers reported that she had not completed her homework even when she was capable

---

[6] In concluding that Ellis had a "less than marked" degree of limitation in the domain of acquiring and using information, the ALJ necessarily concluded that Ellis did not have an "extreme" degree of limitation in that domain. The Court does not understand Brunner to argue that Ellis has an "extreme" limitation. Doc. No. 15, pp. 10-11. Consequently, the Court can affirm the Commissioner's decision based on the ALJ's findings without taking the impermissible step of substituting its own rationale for that of the ALJ. *Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001).

[7] Brunner argues that "there is substantial evidence in the record of 'marked' limitations" in the domains at issue. Doc. No. 15, p. 11. This argument applies the "substantial evidence" standard backwards. The applicable statutory language provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The "substantial evidence" standard requires "less than a preponderance of the evidence." *Jesurum v. Secretary of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995). The dispositive question is whether the Commissioner's findings of fact were supported by "substantial evidence," not whether "substantial evidence" would have also supported different factual findings. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

[8] The ALJ was entitled to rely on her own knowledge in order to interpret the questionnaire submitted by Ellis' teachers. *Murphy v. Astrue*, 496 F.3d 630, 633-634 (7th Cir. 2007).

17

of doing so. R. p. 85. Ellis was better at completing in-class assignments than she was at completing homework assignments, which suggests that she has the ability to excel when she puts forth more of an effort. R. p. 86. The Court does not make these observations to pass judgment on this young girl, who undoubtedly encounters daily difficulties never encountered by most students. Instead, the Court simply acknowledges that the record contains "substantial evidence" to support the ALJ's conclusion that Ellis is not "disabled" within the meaning of Title XVI. Of course, Ellis remains free to avail herself of her statutory rights under the IDEA as she progresses through school and attempts to fulfil her academic potential.

## V. CONCLUSION

The ALJ's determination that Ellis is not "disabled" within the meaning of Title XVI is supported by substantial evidence. Accordingly, the Court will deny Brunner's Motion for Summary Judgment (Doc. No. 14), grant the Commissioner's Motion for Summary Judgment (Doc. No. 18), and affirm the administrative decision made by the Commissioner in this case. An appropriate order follows.

**AND NOW**, this 19th day of March, 2009, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 14) and the Motion for Summary Judgment filed by the Defendant (Doc. No. 18), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED**, that the Defendant's Motion for Summary Judgment is **GRANTED**, and that the decision of the Commissioner of Social Security is **AFFIRMED**.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**